IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES G. WILSON,                    :

    Plaintiff,                    :

v.                                    :    Civil Action No. GLR-13-1176

OCWEN LOAN SERVICING LLC,             :

    Defendant.                    :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff's, Charles G. Wilson ("Wilson"), Motion to Compel Local Rule 103(5)(c) Disclosures (ECF No. 33), and Motion to Strike and/or Disregard (ECF No. 37), and Defendant's, Ocwen Loan Servicing LLC ("Ocwen"), Motion for Summary Judgment (ECF No. 13).

The questions before the Court are whether (1) the disclosure statement filed by Ocwen on April 22, 2013, complied with the requirements of Local Rule 103(5)(c) and Federal Rule of Civil Procedure 7.1; (2) Ocwen made prejudicial accusations in its Opposition to Wilson's Motion to Compel; and (3) genuine issues of material fact exist as to whether (a) Ocwen or its agents made misrepresentations that misled Wilson into signing an Occupancy Termination Agreement ("OTA"); and (b) Wilson was under duress when he executed the OTA.  The issues have been fully briefed and no hearing is necessary.  See Local Rule 105.6

1

(D.Md. 2011). For the reasons given below, Wilson's Motion to Compel Local Rule 103(5)(c) Disclosures will be denied as moot, Wilson's Motion to Strike and/or Disregard will be denied, and Ocwen's Motion for Summary Judgment will be granted.

## I. BACKGROUND[1]

Wilson occupied the second floor front room of the property located at 124 W. Lafayette Ave., Baltimore, Maryland ("Premises"), but was not a "bona fide" tenant. Ocwen owned the Premises. In July 2011, Ocwen retained Atlas Realty, Inc. ("Atlas") to manage local activities and remove any occupant from the Premises. Ocwen authorized Atlas to negotiate with Wilson about the terms of an OTA, pursuant to which Ocwen would pay Wilson $12,000 in exchange for him vacating the Premises and leaving it in broom clean condition with all debris and furniture removed.

Wilson alleges that during pre-contractual negotiations he informed Ocwen that the previous owner, who had also resided in the Premises, and other former tenants had left items in various areas of the house. Wilson alleges that he asked Ocwen if he was responsible for removing items of the former owner and her tenants and cleaning the areas they occupied, but was assured that he would not be responsible for removing said items.

_____

[1] Unless otherwise noted, the following facts are taken from the Complaint and Ocwen's Motion for Summary Judgment and are viewed in the light most favorable to Wilson.

2

Moreover, Wilson alleges that Ocwen assured him he would be paid the $12,000 regardless of items left behind in areas of the house that he did not occupy. Based on these assurances, Wilson executed the OTA on October 7, 2011. (Compl. Ex. A, ECF No. 2).

In the OTA, Wilson agreed to vacate the Premises by October 18, 2011, by removing "all personal belongings and other materials" except fixtures such as appliances, lighting, and carpeting. (Id. ¶ 1). Wilson further agreed to leave the Premises in "broom clean" condition, free of any and all interior and exterior debris and free from any damage or destruction, reasonable wear and tear excepted" ("Required Condition"). (Id. ¶ 2). The OTA does not specify in what manner Wilson was to have his personal belongings or interior or exterior debris removed from the Premises or how he was to attain broom clean condition. (See generally id.). Wilson agreed to allow an Ocwen agent to inspect "**ALL** areas of the Premises." (Id. ¶ 3) (emphasis in original). If the agent determined that the Premises was in the Required Condition, Wislon would receive payment. (Id. ¶ 4, 14). If Wilson failed to vacate the Premises as agreed, Ocwen was entitled to proceed with eviction proceedings (id. ¶ 13), and Wilson would not be entitled to payment (id. ¶ 4, 14).

On October 18, 2011, Atlas contract worker Peter Mugisha ("Mugisha") inspected the Premises. At the time of inspection

3

there was furniture and other debris in areas of the Premises Wilson states he did not occupy. (Def.'s Mot. Summ. J. Mugisha Aff. ¶ 10, ECF No. 13). Ocwen alleges that upon completion of the inspection, Mugisha refused to pay Wilson the $12,000 but offered to return to the Premises at a later time to give Wilson the opportunity to meet the Required Condition. (Id. ¶ 13, 16).

Wilson alleges that upon request for payment of the $12,000, Mugisha refused to turn over payment unless Wilson paid him $200 to clean the areas that had been occupied by the previous owner and tenants. Mugisha states that as a result of Wilson's statement that he was unable to remove the furniture and debris because of his physical disabilities, Mugisha located a third-party willing to put the Premises in the Required Condition for a $200 fee. Wilson alleges that although he agreed to pay Mugisha $200, he did so only after Mugisha threatened him. Additionally, Wilson states that he believed Mugisha was extorting money from him. Wilson further alleges that Mugisha called him approximately one hour after the inspection and threatened to stop payment on the check if he did not pay an additional $300. As a result, Wilson alleges that he then offered to return the check or its equivalent to Ocwen if it allowed him to reoccupy the Premises. Wilson further alleges that he repeatedly attempted to rescind the contract with Ocwen and its agents, but to no avail.

Wilson initiated this action against Ocwen in the Circuit Court for Baltimore City, Maryland on June 28, 2012. He seeks recission of the OTA with Ocwen, $200 in restitution, and an order granting him the right to re-occupy the premises at 124 W. Lafayette Ave., Baltimore, Maryland. (See Compl. at 5).

On March 19, 2013, Ocwen filed a Motion for Summary Judgment. Wilson filed an Opposition on April 2, 2013, and Ocwen filed a Reply on April 16, 2013. Ocwen then removed this case to this Court, invoking federal diversity jurisdiction under 28 U.S.C. § 1332.[2] (ECF No. 1). Thereafter, Wilson filed a Motion to Compel Local Rule 103(5)(c) Disclosures on July 11, 2013. Ocwen filed an Opposition on July 11, 2013, and Wilson filed a Reply on July 29, 2013. On August 6, 2013, Wilson filed a Motion to Strike and/or Disregard. Ocwen filed an Opposition on August 14, 2013, and no reply was filed.

## II. DISCUSSION

### A.  Disclosure Statement by Ocwen

Because Ocwen subsequently filed its Local Rule 103.3 disclosures on April 22, 2013 (ECF No. 24) in compliance with

---

[2]  Wilson did not specifically indicate the amount in controversy exceeded $75,000 until he served Ocwen with his April 17, 2013 Pre-Trial Memorandum. All prior documents in the record either showed that the amount in controversy was less than $75,000 or made no precise demand for financial damages. Ocwen did not know the case was removable until April 19, 2013, when it discovered the amount in controversy was enough to confer jurisdiction in this Court. (See ECF No. 32).

the requirements of Local Rule 103(5)(c) and Federal Rule of Civil Procedure 7.1, Wilson's Motion to Compel will be denied as moot.

Rule 7.1 states that "[a] nongovernmental corporate party must file two copies of a disclosure statement that: (1) identifies any parent corporation and any publicly held corporation owning 10% or more of its stock; or (2) states that there is no such corporation." Fed.R.Civ.P. 7.1(a). The Advisory Committee Notes to Rule 7.1 indicate that the Rule "does not prohibit local rules that require disclosures in addition to those required by Rule 7.1." Fed.R.Civ.P. 7.1 advisory committee's note.

Local Rule 103.3 requires a party to disclose:

> the identity of any parent or other affiliate of a corporate party and the description of the relationship between the party and such affiliates, [and] the identity of any corporation, unincorporated association, partnership or other business entity, not a party to the case, which may have any financial interest whatsoever in the outcome of the litigation and the nature of its financial interest.

Loc. R. 103.3. When Ocwen filed its Notice of Removal from the Circuit Court for Baltimore City on April 22, 2013, it simultaneously filed its Disclosure Statement pursuant to Local Rule 103.3. (ECF No. 24). Wilson filed a Motion to Compel Ocwen to file a Rule 103.3 disclosure, representing to the Court that Ocwen had not filed the disclosure. (ECF No. 33). Ocwen opposed the Motion, pointing out that it had timely filed the

disclosure. (ECF No. 34). In reply, Wilson indicates that although the disclosure had in fact been filed, it was deficient because it did not comply with the requirements of Local Rule 103(5)(c) and Rule 7.1.

Ocwen's Disclosure Statement identifies itself as "a non-governmental limited liability company, whose sole member is Ocwen Financial Corporation." (Loc. R. 103.3 Disclosure Statement). Wilson does not suggest that he is aware of any other business entity that may have a financial interest in the litigation. As such, the Court finds that Ocwen's Disclosure Statement complies with the requirements of Local Rule 103 and Federal Rule of Civil Procedure 7.1. Accordingly, Wilson's Motion to Compel Local Rule 103(5)(c) Disclosures (ECF No. 33) will be denied as moot.

**B.** <u>**Motion to Strike and/or Disregard**</u>

None of the grounds offered by Wilson support Rule 11 sanctions in this case.

While Wilson's Motion to Strike and/or Disregard is based upon Federal Rule of Civil Procedure 11(b), he requests that the Court order Ocwen's accusation that he is trying to "unnecessarily increase the cost of litigation" be stricken from Ocwen's opposition and the record. (Pl.'s Mot. Strike at 3, ECF No. 37). Impertinent or "scandalous matter" may be stricken from papers filed with the Court under Rule 12(f). A motion

under Rule 12(f), however, must be made by a party before responding to the pleading. Fed.R.Civ.P. 12(f). Here, Wilson filed his Motion to Strike after responding to Ocwen's Opposition. Wilson's Motion to Strike was untimely under Rule 12(f). Thus, the Court will consider Wilson's Motion under Rule 11(b).

Sanctions may be imposed against an attorney, law firm, or party when it appears that a pleading, written motion, or other paper, has been presented for any improper purpose, claims, defenses, or other legal contentions within are warranted upon a frivolous argument, the factual contentions do not have evidentiary support, or the denials of factual contentions are not warranted on the evidence. Fed.R.Civ.P. 11(a)-(b).

Wilson asserts three grounds upon which sanctions could be imposed: (1) improper purpose; (2) frivolous legal contention; and (3) legal contention in the absence of evidentiary support. (Pl.'s Mot. Strike). In its Opposition to Wilson's Motion to Compel Disclosures, Ocwen contends that Wilson was trying to "unnecessarily increase the cost of litigation." Wilson argues that this is a legal contention not supported by evidence and designed to prejudice the Court against his Motion to Compel thus modifying existing law requiring Ocwen to file disclosures.

There is neither a factual nor legal basis for concluding that Ocwen's Opposition to Wilson's Motion to Compel is for an

improper purpose or attempts to modify existing law. It is well within Ocwen's purview to file a response to Wilson's Motion designed to convince the Court that Wilson is not entitled to the relief sought. Moreover, there is no legal basis for concluding that the contention that Wilson was trying to "unnecessarily increase the cost of litigation" is a legal contention. The Court finds Ocwen statement to be a factual contention offered in support of Ocwen's opposition to Wilson's Motion. Accordingly, Wilson's Motion to Strike and/or Disregard (ECF No. 37) will be denied.

**C.** **Summary Judgment**

    **1.** **Standard of Review**

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citation omitted). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

Because this case arises under the Court's diversity jurisdiction, the substantive law to be considered is that of the state in which the action arose. <u>Estrin v. Natural Answers, Inc.</u>, 103 F.App'x 702, 704 (4th Cir. 2004). In this case, Maryland law applies.

**2. Analysis**

**a. Misrepresentation of a Future Act**

Wilson asserts that Ocwen was negligent in misrepresenting that the payment of $12,000 would not be delayed or stopped because of furniture and debris left by the former owner and tenants in other areas of the Premises. Ocwen urges that the representations about which Wilson complains are not actionable because they relate to future conduct.

This Court has previously found "an action for fraud will lie only for misrepresentation of past or existing facts, and that breach of a promise to render a performance in the future is redressable only by an action in contract." <u>200 North Gilmor, LLC v. Capital One, Nat'l Ass'n</u>, 863 F.Supp.2d 480, 492 (D.Md. 2012) (citing <u>Learning Works, Inc. v. Learning Annex, Inc.</u>, 830 F.2d 541, 546 (4th Cir. 1987)). A representation made, however, "with an existing intention not to perform is actionable for fraud." <u>Id.</u> But, because a party must know, at the time it makes the representation that the representation is false, the misrepresentation is fraudulent and the negligent

11

misrepresentation claim is converted into a claim for fraudulent misrepresentation. Id.; see alson Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc., 264 F.Supp.2d 282, 291 (D.Md. 2003) ("If the party knows the representation to be false at the time it is made, then the claim is one for fraudulent misrepresentation."); Orteck Int'l Inc. v. TransPacific Tire & Wheel, Inc., No. DKC 2005-2882, 2006 WL 2572474, at *20 (D.Md. Sept. 5, 2006) ("To the extent that a party making the representation about its future conduct knows at the time the statement is made that it is false, the claim converts to one of fraudulent misrepresentation." (citation omitted)).

Here, Wilson asserts that Ocwen made a representation of a future intention not to hold him responsible for removing the belongings of the former owner and tenants and cleaning the areas they occupied, but then withheld payment under the OTA until he agreed to pay for the same. These assertions sound in fraud rather than negligence.

The elements of fraudulent misrepresentation are: (1) a false representation; (2) made with the knowledge of its falsity, or in reckless indifference to the truth; (3) with the intent of defrauding the person claiming to be injured; (4) justifiable reliance by that person; and (5) damages caused as a result of the fraudulent statement. Heritage, 264 F.Supp.2d at 291 (citation omitted). Thus, to survive summary judgment,

Wilson must demonstrate that he justifiably relied on the Ocwen's alleged misrepresentation.

"Ordinarily, the matter of reasonableness of reliance is an issue reserved for the finder of fact." Gilmor, 863 F.Supp.2d at 491. There may be instances, however, when a party's reliance on an oral promise may be "unreasonable as a matter of law." Id. In D & G Flooring, LLC v. Home Depot U.S.A., Inc., 346 F.Supp.2d 818, 824 (D.Md. 2004), for example, the district court, applying Maryland law, determined where the express terms of the contract contradicted the alleged oral promise, it was "unfathomable" that a sophisticated business entity would not require the promise to be expressed in writing. Id.

Here, Wilson contends that the term "Premises" as used in the OTA refers solely to the second floor area he occupied. In support of this claim, Wilson indicates that prior to signing the OTA he informed Ocwen of the existence of furniture and debris left behind by the former landlord and tenants; he made Ocwen aware of the fact that he only occupied the second floor front room of the Premises; and he was ensured that he would not be responsible for removing the furniture and debris left behind by former occupants. Ocwen contends that the plain language of the OTA defines "Premises" as 124 W. Lafayette Ave., Baltimore, Maryland and does not specify a specific area, room, or unit within the Premises to which the Required Condition applies.

Contract interpretation is a matter of law, not fact. <u>Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC</u>, 829 A.2d 540, 544 (Md. 2003). The parol evidence rule precludes parties from attempting to contradict written terms of an agreement through the use of prior oral or written declarations. <u>Sagent Tech., Inc. v. Micros Sys., Inc.</u>, 276 F.Supp.2d 464, 468 (D.Md. 2003). Parol evidence "is only admissible after the court finds the contract to be ambiguous." <u>Sy-Lene</u>, 829 at 544. "In determining whether a writing is ambiguous, Maryland has long adhered to the law of the objective interpretation of contracts." <u>Calomiris v. Woods</u>, 353 Md. 425, 435 (1999) (citations omitted). Under the objective view, a contract is only ambiguous when it is susceptible to more than one meaning by a "reasonably prudent person." <u>Id.</u> at 436. If a contract is unambiguous, its terms will not be overridden by what the parties thought or intended the contract to mean when they executed it. <u>Id.</u>

> [W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean.

Id. (quoting Gen. Motors Acceptance Corp. v. Daniels, 303 Md. 254, 260 (1985)). Thus, evidence of the parties' prior intentions and negotiations are not admissible. Id.

The OTA's language is plain and unambiguous. "Premises" is defined as 124 W. Lafayette Ave., Baltimore, Maryland. (Compl. Ex. A). The definition does not limit the meaning of "Premises" to include a specific area, room, or unit within 124 W. Lafayette Ave., Baltimore, Maryland. (See generally id.). Thus, regardless of what Wilson thought or intended the term to mean during the negotiations and when he executed the OTA, the Court must assume the parties meant "Premises" to include the entire property, not just a particular floor, room, or unit.

Here, as in D & G Flooring, the express terms of the contract (i.e., the Required Condition) directly contradict the alleged oral promise that Wilson would not be held responsible for cleaning the areas of the former owner and tenants. While the Court is by no means suggesting that Wilson should be held to the same negotiating standards as the sophisticated business entities in D & G Flooring, it does find that it is objectively unreasonable for a party to rely on representations made during pre-contractual negotiations where the express terms of the contract directly contradict those representations. Because Wilson's reliance on Ocwen's alleged oral promise was objectively unreasonable, the Court finds no genuine issues of

material fact exist as to whether Ocwen or its agents made misrepresentations that misled Wilson into signing the OTA. Accordingly, Ocwen is entitled to summary judgment on the issue of negligent and fraudulent misrepresentation.[3]

## b. Duress

Wilson also argues that he is entitled to recission of the OTA based on duress. He alleges that he paid Mugisha $200 under duress after being improperly threatened that he would not receive the $12,000 and he would be evicted if he did not pay to remove the remaining furniture and debris.

"In order to establish duress, there must be a wrongful act which deprives an individual of the exercise of his free will." Eckstein v. Eckstein, 379 A.2d 757, 761 (1978) (citing Cent. Bank of Frederick v. Copeland, 18 Md. 305 (1862)). There are generally two type of cases in which Maryland courts have found an agreement was made under duress, physical inducement and improper threat. Emp'rs Ins. of Wausau v. Bond, No. HAR-90-1139, 1991 WL 8431, at *2 (D.Md. Jan. 25, 1991). An improper threat is found where the threat "leaves the victim with no reasonable alternative other than to execute the agreement."

---

[3]   Ocwen's arguments based on Wilson's negligent misrepresentation claim do not need to be addressed because justifiable reliance is an element of both claims.   Thus, Wilson's claim fails on either ground.

_Id._ "This form of duress most often arises . . . in the form of economic duress." _Id._

To obtain the $12,000 payment under the OTA Wilson was required to vacate the Premises in the Required Condition. (Compl. Ex. A ¶ 2). In the event that Wilson did not vacate the Premises as set forth in the OTA, he was subject to eviction. (_Id._ ¶ 11). The OTA is silent on the means by which Wilson may obtain the Required Condition. (_See generally_ _id._). The undisputed evidence indicates that the Premises was not in the Required Condition at the time of inspection. There were a number of options available to Wilson in obtaining the Required Condition, including removing the furniture and debris on his own, asking a friend to assist him, or finding and hiring a third-party to complete the task for him. Notwithstanding these options, Wilson voluntarily agreed to have a third-party, recommended by Mugish, clean the Premises for a fee of $200. Presumably Wilson chose this option because he believed that doing so was in his best interest at the time. Mugisha did not make an improper threat, but rather was enforcing the plain language of the OTA. Thus, the Court finds no genuine issue of material fact exists as to whether Wilson was under duress when he executed the OTA. Accordingly, Ocwen is entitled to summary judgment on the issue of duress.

### III. CONCLUSION

For the foregoing reasons, this Court will, by separate Order, DENY AS MOOT Wilson's Motion to Compel Local Rule 103(5)(c) Disclosures (ECF No. 33); DENY Wilson's Motion to Strike and/or Disregard (ECF No. 37); and GRANT Ocwen's Motion for Summary Judgment (ECF No. 13).

Entered this 18th day of September, 2013

/s/

_____
George L. Russell, III
United States District Judge